IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

EUGENIA WOODS,

Plaintiff,

v.                                       Case No.: 4:19-cv-356-MW-MAF

FLORIDA DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES;
C.M. SWINDLE, in his individual capacity;
WALT McNEIL, in his official capacity as
SHERIFF, LEON COUNTY, FLORIDA; and
CORIZON HEALTH, INC.

Defendants.

_____/

## DEFENDANTS', CORIZON HEALTH, INC. MOTION FOR SUMMARY JUDGMENT AS TO COUNTS XI, XII, AND XIV

Defendant, CORIZON HEALTH, INC, hereby files its Motion for Summary Judgment as to Counts XI, XII, and XIV, and in support thereof, states as follows:

## I. STATEMENT OF CLAIM

Plaintiff, EUGENIA BLANTON WOODS, sues Defendant, CORIZON HEALTH, INC, and alleges that Defendant's conduct constituted "deliberate indifference" in violation of Eugenia Woods' right to be free from cruel and

1

unusual punishment. Plaintiff also brought Counts for Common Law Negligence and Negligent Supervision and Training against Defendant.

## II. STATEMENT OF FACTS

1. Plaintiff was arrested on October 12, 2016 after taking multiple highway patrolman on a chase down Interstate 10. In the video filed with the Court by Defendant Swindle, it is clear that Plaintiff was disoriented, tearful, and appeared as though she was intoxicated. (See Doc. 76, filed by Defendant Swindle)

2. Plaintiff was brought to the Leon County Jail after her arrest on October 12, 2016 and was booked into custody by officers of the Leon County Sheriff's Department.

3. Courtnee Beerli, LPN was the nurse assigned to the booking area on the date of Plaintiff's arrest. Nurse Beerli first made contact with Plaintiff at 8:00 pm on October 12, 2016. (Doc 77-1, Exhibit A)

4. Nurse Beerli's evaluation of Plaintiff during the booking process revealed the following:
   a. Plaintiff denied major medical or substance abuse history;
   b. Plaintiff was guarding left arm;
   c. Plaintiff's vital signs were within normal limits;

    d. Plaintiff did not smell of ETOH;

    e. Plaintiff was alert and oriented times two but could not name the date;

    f. Plaintiff was ambulatory with a shuffling gate;

    g. Plaintiff hesitated when answering questions;

    h. Plaintiff sometimes answered questions inappropriately as if disoriented; and

    i. Plaintiff was unable to follow simple commands. (Doc 77-1, Exhibit A)

5. Nurse Beerli determined that Plaintiff was disoriented due to possible substance abuse and notified Alyssa Block, RN of her findings and initiated the CIWA/COWS protocol. (Doc 77-1, Exhibit A, Doc 77-2, Exhibit B)

6. Once the CIWA/COWS protocol was initiated, Plaintiff was sent to the medical department for evaluation before being housed. (Doc 77-3, Exhibit C) She was evaluated by Nurse Block at 10:00 pm, just two hours after being first seen by Nurse Beerli. (Doc 77-1, Exhibit A). Nurse Block noted improvement in that, Plaintiff was alert and oriented times three, was following commands even though she was still unable to state what medications she was on. (Doc 77-1, Exhibit A)

7. In order to obtain the information related to Plaintiff's medications, Nurse Block obtained signed consent from Plaintiff to request medication verification from Plaintiff's pharmacy. (Doc 77-4, Exhibit D)

8. Pending verification of Plaintiff's medical condition, Nurse Block issued a low bunk pass to Plaintiff regarding what Plaintiff had identified as having "right knee issues." (Doc 78-1, Exhibit E)

9. Following her evaluation in the medical department, Plaintiff was housed in general population and was subsequently brought up to the medical department three times a day to be evaluated pursuant to the CIWA/COWS protocol. (Doc 77-6, Exhibit F, Plaintiff depo, 46:10-47:11)

10. The COWS/CWIS procedure is used at the Leon County Jail to prevent patient self-harm or to prevent the patient from harming others while undergoing substance abuse withdrawal. (Doc 77-7, Exhibit G, Affidavit of Dr. Maria Garcia)

11. The protocol incorporates nursing encounter tools, briefings for correctional officers, assessment tools including forms and flow sheets that can be used during regular assessments, as well as a quick reference guide for medical staff. This protocol is outlined in the Substance Abuse Clinical Pathways implemented by Corizon. (Doc 77-8, Exhibit H)

12. During the monitoring period, the detainee is evaluated using a rubric that requires the nurse to ask the detainee questions about his/her symptoms and that requires the nurse to document observations made about the detainee's condition.  The evaluation is scheduled to occur once per shift during a 24-hour period such that the detainee would be seen three times a day in the medical department. (Doc 77-7, Exhibit G)

13. When detainee health and safety is concerned at the booking stage, a physician consult is not necessary to initiate the protocol. The booking nurse may initiate the protocol. (Doc 77-7, Exhibit G). Nurse Beerli initiated the protocol on October 12, 2016. (Doc 77-9, Exhibit I, Affidavit of C. Beerli (Stevens)). This protocol could be initiated without consulting Dr. Garcia. (Doc 77-9, Exhibit I)

14. Dr. Maria Garcia did not evaluate or provide treatment to Ms. Woods while she was detained at the Leon County Jail from October 12, 2016-October 15, 2016.  She was on site from 8:00 am to 5:00 pm, Monday through Thursday and from 8:00 am until 12:00 pm on Fridays if the nurses on staff felt Ms. Woods needed to be triaged and cost nor timing prevented the nurses from calling Dr. Garcia even when she was off-duty at any point during Ms. Woods' period of detainment. (Doc 77-7, Exhibit G)

15. During the time that Plaintiff was being monitored on the CIWA/COWS protocol, she was given the opportunity to speak to a nurse about her physical condition on multiple occasions. Nurse Beerli, in her medical judgment, felt that if Plaintiff was provided any sort of over-the-counter pain medicine, it might mask the symptoms of a possible dangerous withdrawal. (Doc 77-9, Exhibit I)

16. The interactions between nursing staff and Plaintiff were documented in the attached (Doc 77-10, Exhibit J) as follows:

    a. CIWA assessment, 10/13/16, 3:00 am: no observed symptoms, no voiced patient complaints

    b. COWS assessment, 10/13/16, 3:30 am: pulse rate elevated, no other observed symptoms, no voiced patient complaints

    c. CIWA assessment, 10/13/16, 2:00 pm: no observed symptoms, no voiced patient complaints

    d. COWS assessment, 10/13/16, 2:00 pm: no observed symptoms, no voiced patient complaints

    e. CIWA assessment, 10/13/16, 10:30 pm: no observed symptoms, no voiced patient complaints

    f. COWS assessment, 10/13/16, 10:30 pm: pulse rate elevated, no other observed symptoms, no voiced patient complaints

    g. CIWA assessment, 10/14/16, 3:00 am, no observed symptoms, no voiced patient complaints

    h. COWS assessment, 10/14/16, 3:00 am, pulse rate elevated, no other observed symptoms, no voiced patient complaints

    i. CIWA assessment, 10/14/16, 3:00 pm, no observed symptoms, patient complaints of mild anxiety

    j. COWS assessment, 10/14/16, 3:00 pm, pulse rate elevated, no other observed symptoms, no voiced patient complaints

    k. CIWA assessment, 10/14/16, 10:00 pm, no observed symptoms, no voiced patient complaints

    l. COWS assessment, 10/14/16, 10:00 pm, pulse rate elevated, no other observed symptoms, patient complaints of severe diffuse aching of joints/muscles

    m. COWS assessment, 10/15/16, 2:00 pm: pulse rate elevated, no other observed symptoms, no voiced patient complaints

(Doc 77-10, Exhibit J), CIWA/COWS protocol forms dated 10/13/16-10/15/16)

17. During the time Plaintiff was being monitored using the CIWA/COWS protocol, Plaintiff completed a Health Services Request Form. (Doc 77-11, Exhibit K). While the form indicated Plaintiff wrote the information on the

form on October 13, 2016, the document itself reflects that Plaintiff did not provide the written request to a nurse in the medical department until late the next day, October 14, 2016 at 10:30 pm.

18. The written request made by Plaintiff did not reference pain to Plaintiff's arm or shoulder. The request asked that she be provided Gabapentin, which she says in her request, was to be taken at a dosage of 800 mg, 4 times a day. (Doc 77-11, Exhibit K) This written request from Plaintiff was the first time any reference to Gabapentin was made by Plaintiff to the staff in the medical department.

19. Despite what was written by Plaintiff, the record reflects that the written request was not actually provided to a nurse until late the following evening. (Doc 77-11, Exhibit K). The nurse who received the written request made an additional note that Plaintiff was also, at almost midnight on October 14, 2016, complaining about left shoulder and upper left arm bruising and swelling, that her pain was at a 10 on the pain scale, and that Plaintiff was requesting pain medicine. (Doc 77-11, Exhibit K)

20. The policy at the Leon County Jail allows 24 hours for a detainee to be triaged after the submission of a Health Services Request Form. (Doc 77-12, Exhibit L, policy J-E-07.00). The policy further indicates that a face-to-face encounter between the patient and a qualified health professional should

8

occur within 48 hours after receiving the health care request. (Doc 77-12, Exhibit L)

21. Plaintiff was released from the Leon County Jail at approximately 4:40 pm on October 15, 2016, less than 24 hours after submitting her Health Services Request Form. (Doc 77-13, Exhibit M)

22. Plaintiff testified that she had given the request to nurse when the nurse came to the pod and not on one of the occasions she was seen in the medical department. Plaintiff also testified that she only asked for Tylenol once for pain and it was on the occasion of her handing the Health Services Request form to the nurse. (Doc 77-6, Exhibit F, 51:17-52:24)

23. The records from University of Florida-Shands indicate that Plaintiff had sustained a fracture of the humerus in her left arm but that surgical intervention was not needed. Instead, the orthopedic who evaluated Plaintiff placed Plaintiff's arm in a sling and monitored the healing fracture until December 28, 2016, at which time, physical therapy was ordered. (Doc 77-14, Exhibit N and Doc 77-6, Exhibit F)

### III. ARGUMENT

Plaintiff brought this lawsuit against the corporation, Corizon Health, Inc. but has not asserted any allegations against any individual Corizon Health, Inc.

employees. In her Amended Complaint against Corizon Health, Inc., Plaintiff calls into question the medical treatment received during a less than 72 hour incarceration at the Leon County Jail. She alleges that Defendant corporation, Corizon Health, Inc., had a custom, policy, and practice "to delegate the final decision-making authority to the Corizon medical staff" and "to only provide treatment for an objectively serious medical condition upon the approval of a doctor who is not readily available for days," and that these policies constituted deliberate indifference to Plaintiff's serious medical needs. (Doc. 12, ¶ 49) However, Plaintiff has failed to present or develop any evidence in this case to support that allegation.

On the contrary, the record evidence as presented herein demonstrates that Corizon Health, Inc. had policies in place to address both the potential alcohol or opiate withdrawal Plaintiff may have been experiencing as well as to evaluate and treat Plaintiff's physical injuries through Clinical Pathways tools, evaluations by nurses and doctors when necessary. These policies were developed in accordance with the NCCHC standards for Health Services and with the Standards for Adult Local Detention Facilities. There is no evidence that Corizon Health, Inc. deviated from these policies and there is certainly no evidence that Corizon Health, Inc.'s customs or policies were unconstitutional. Plaintiff's allegations in that regard are made in passing and are wholly without support or merit in this case.

## COUNT XI—VIOLATION OF 42 U.S.C. §1983
## BY DEFENDANT, CORIZON HEALTH, INC.

Because Corizon is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. See *Monell v. Department of Soc. Svcs*, 436 U.S. 658, 691 (1978). "A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . .A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375-76

(11th Cir. 2000); see also *Monell*, 436 U.S. 658. That is, "liability under §1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986).

A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to respondeat superior liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. *Gold v. City of Miami*, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); see also *Brown*, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements. Rather, Plaintiff has available to her two methods to prove an unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Corizon. She must also allege the policy was created with

12

knowledge that Plaintiff's specific injuries were a highly probable consequence of the policy's creation.

Plaintiff has alleged that Corizon Health, Inc. had a policy and/or custom of not allowing treatment of serious medical needs by medical staff without the approval of a doctor who was not always available.  This allegation is not supported by the overwhelming evidence in this case to the contrary.  Dr. Garcia was the medical director at the Leon County Jail at the time Plaintiff was detained. She was on site during the day when Plaintiff was at the jail and she was likewise available by phone in the evenings when she was off-duty if the nurses at the jail felt they needed physician approval, which in this case, they did not.  Here, the policy in question regarding the implementation of the substance withdrawal protocol did not require physician approval.  In fact, there was no delay at all in evaluating the Plaintiff and responding to her medical needs which began when Plaintiff was booked.

The booking nurse, Courtnee Beerli, made a decision after evaluating the Plaintiff that it was best for the Plaintiff to be monitored for possible withdrawals. Nurse Beerli made this decision to protect the Plaintiff from harming herself or others.  There have been no allegations made in the Complaint or by the Plaintiff that the substance abuse withdrawal protocol initiated and followed by Corizon Health, Inc. was an unconstitutional policy. Instead, Plaintiff has only alleged that

there was a policy to deny care until physician approval could be obtained and the discovery in this case has not borne that out.

Even assuming arguendo that there is a question of fact regarding the practical application of the policy in question or that Plaintiff will now argue that the substance abuse withdrawal protocol was itself unconstitutional, Plaintiff is required prove that the policy itself was created with "deliberate indifference to its known or obvious consequences." Again, Plaintiff has not developed, elicited, or presented any evidence to prove that the substance withdrawal policy was created with deliberate indifference. For these reasons, and based on the facts presented herein, Plaintiff's claim for deliberate indifference as to the corporation, Corizon Health, Inc., must fail.

## COUNT XII-COMMON LAW NEGLIGENCE
## BY DEFENDANT, CORIZON HEALTH, INC.

Plaintiff has alleged, in Count XII of its Amended Complaint what is, in effect, a claim that Corizon Health, Inc. should be liable for the actions of its employees on a theory of respondeat superior. Specifically, Plaintiff alleges that the employees were "acting within the scope of their employment" and that Corizon "knew or should have known" that Plaintiff would come in contact with its employees who were responsible for providing medical care to inmates in the

Leon County Jail. (Doc. 12, ¶¶130-133) Plaintiff then skips ahead and alleges that the actions of Defendant, Corizon, Plaintiff suffered injuries. (Doc. 12, ¶ 136)

First and foremost, this Count does NOT articulate an actual duty owed by Defendant to the Plaintiff beyond stating it owed Plaintiff generic "legal duties" because the Plaintiff was in the "zone of risk." (Doc. 12, ¶131)  In addition to this failure in presenting a claim for negligence, Plaintiff likewise does not assert anywhere within Count XII that Corizon breached any identified duty.  Without even identifying two elements of the cause of action of negligence, Plaintiff can hardly be said to have met its burden of proof in their regard.  Still, this Count, as insufficiently pled as it is, appears to be an attempt at presenting a claim for medical negligence disguised as "common law negligence" in name only.  For this additional reason, Plaintiff's claim for common law negligence should fail.

It is undisputed that Plaintiff failed to comply with Chapter 766, Florida Statutes.  Section 766.106, Florida Statutes, imposes presuit requirements on all claims of medical negligence.  A claim of medical negligence "is one 'arising out of the rendering of, or the failure to render, medical care of services.'" *Indian River Mem'l Hosp., Inc. v. Browne,* 44 So. 3d 237, 238 (Fla 4th DCA 2010).  A claim for negligence is subject to Chapter 766's presuit requirements "if the wrongful act [is] directly related to improper applications of medical services and the use of professional judgment and skill." *Stubbs v. Sergi-Staff, Inc.,* 78 So. 2d

15

69, 70 (Fla 4th DCA 2012). A reasonable reading of Count XII of the Amended Complaint is that the allegations relate to the level of care provided to the Plaintiff and the decisions made by the booking nurse to not contact Dr. Garcia at the time Plaintiff was booked into the jail. A reasonable reading of Count XII of the Amended Complaint is that the allegations relate to the level of care provided by the nurses who monitored Plaintiff while on the substance abuse protocol. Plaintiff should have properly complied with the requirements of Chapter 766 if she wanted to address the adequacy of the care provided by the nurses but she did not.

Plaintiff has provided no Notice of Intent to initiate Litigation pursuant to section 766.106, Florida Statutes (2011). Nor has Plaintiff provided corroboration of reasonable grounds to initiate medical negligence in the form of a verified written medical expert opinion, as required by section 766.202, Florida Statutes (2012). For all of the reasons stated above, Count XII of Plaintiff's Complaint is subject to dismissal.

### COUNT XIV-NEGLIGENT TRAINING, AND SUPERVISION BY DEFENDANT, CORIZON HEALTH, INC.

Plaintiff has alleged, in Count XIV of its Amended Complaint that "Defendant, Corizon knew or should have known that the actions, omissions, and derelictions of its agents and employees could cause injuries to Plaintiff." (Doc. 12, ¶140) This Count, using the "knew or should have known" language places the quality of Plaintiff's care provided by Corizon Health's agents and employees

16

squarely into question. This Count must fail because, as previously stated herein, Plaintiff did not meet the necessary presuit requirements to call into question the adequacy of the care.

That Plaintiff alleges a breach of a duty to train and/or duty to supervise its employees does not absolve Plaintiff from meeting its burden of showing exactly how Corizon Health, Inc. failed to do these things. Plaintiff has not identified what policy Corizon employees were improperly trained on or improperly supervised on. The only policy addressed by Plaintiff in the Amended Complaint is the "policy" to not provide care to an inmate without doctor approval and the overwhelming evidence as cited herein demonstrates the opposite. Plaintiff was evaluated and treated within the first hour of being booked into the jail. She was placed on a substance abuse withdrawal protocol for her own safety based on the medical judgment of the nurse on duty when she was booked. The record evidence reflects that the nurses understood and had been trained on the protocol and that the protocol was followed. The record evidence reflects that the nurses on staff understood and followed policy when the medical department received the Health Services Request form from the Plaintiff to be evaluated for her shoulder injury. That the Plaintiff was unhappy with the care she received pursuant to these policies does not mean that the nurses administering the policies were improperly trained or supervised.

17

## CONCLUSION

Plaintiff's allegations against Defendant, Corizon Health, Inc. are unfounded on all three counts. First, Plaintiff struggles to articulate what exactly Corizon Health, Inc. did to violate her constitutional rights. Since Plaintiff did not sue any named individual medical providers, there is no need for an analysis of whether any of the nurses who treated the Plaintiff were deliberately indifferent to her medical needs. Instead, the only analysis to be had regarding deliberate indifference applies to whether Corizon Health, Inc, the corporation, had a policy in place that violated her rights. Plaintiff failed to meet her burden in this regard. Second, Plaintiff has pled common law negligence against Corizon Health, Inc. but has not pled the necessary elements for a negligence cause of action in addition to not complying with presuit in order to address what appears to actually be a claim for medical negligence. The same analysis applies to the overreaching and hard to understand claim for negligent training and negligent supervision. Despite a lengthy discovery process in this case, Plaintiff has failed to satisfy its burden of pleading or proving the three counts against Defendant, Corizon Health, Inc.

WHEREFORE, Defendant, Corizon Health, Inc., hereby requests that Counts XI, XII, and XIV be dismissed with prejudice.

## CERTIFICATE OF WORD LIMITATION

In accordance with N.D. Fla. Loc. R. 7.1(F), the number of words in the memorandum, which excludes the case style, signature block, and certificates, is 3,689.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing has been provided via CM/ECF and electronic mail to Plaintiff Eugenia Woods upon counsel Marie Mattox, marie@mattoxlaw.com; Cynthia Myers at cynthia@mattoxlaw.com of Marie Mattox PA, 203 N. Gadsen St. Tallahassee, FL 32301, 850-383-4800, Defendant Walt McNeil upon counsel Dawn Pompey Whitehurst, Sniffen & Spellman, P.A. 123 N Monroe St, Tallahassee, FL 32301, dwhitehurst@sniffenlaw.com, twylie@sniffenlaw.com; Defendant C. M. Swindle and Florida DHS upon counsel Brian C. Keri, Brian C. Keri PA, 3375-H Capital Circle NE, Ste 4, Tallahassee, FL 32308, 850-297-2222 brianckeri@earthlink.net and michellemsmith@earthlink.net this 31st day of August 2020.

/s/ Jami M. Kimbrell
Jami M. Kimbrell, ESQUIRE
Florida Bar No.: 0657379
jmk@brookslawyers.net
arj@brookslawyers.net
Joseph E. Brooks
FBN: 0880752

jeb@brookslawyers.net
paralegal@brookslawyers.net
BROOKS LAW
2629 Mitcham Drive
Tallahassee, FL 32308
Tel: 850-201-0942
ATTORNEYS FOR Corizon