IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

EUGENIA WOODS,

Plaintiff,

v.  Case No.: 4:19-cv-356-MW-MAF

FLORIDA DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES;
C.M. SWINDLE, in his individual capacity;
WALT McNEIL, in his official capacity as
SHERIFF, LEON COUNTY, FLORIDA; and
CORIZON HEALTH, INC.

Defendant.
_____/

### DEFENDANT CORIZON HEALTH, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO COUNT XI

Defendant, CORIZON HEALTH, INC., through undersigned counsel, files this Supplemental Memorandum in support of its Motion for Summary Judgment [Doc. 82] and states as follows:

1. To expound upon the arguments presented in Defendant's Reply Memorandum in Support of its Motion for Summary Judgment, Defendant would like to reiterate that Plaintiff has made a wholly unsupported challenge to Corizon Health's policy related to physician coverage at the Leon County Jail. To the

extent that the Court requires additional briefing on this matter, Defendant would point out that Plaintiff has argued that "Defendant did not have onsite twenty-four-hour doctor care" and that the lack of 24-hour doctor care, as a policy, can "lead to the deliberate indifference of inmate's medical needs…" because important health care would allegedly be delayed or because nurses instead of doctors would be providing treatment. [Doc. 88, p. 14]   This argument by Plaintiff is without merit, without evidentiary support altogether, and ignores the very real and important role that nurses play in inmate care.  As previously briefed to the Court in Defendant's Reply Memorandum, jail policy J-C-07.00, modelled after standard J-C-07 of the National Commission on Correctional Healthcare (NCCHC), does not specify that a physician must be on site at the jail around the clock, or 24 hours a day.  Rather, the policy allows for "a sufficient number of health staff of varying types [to] provide inmates with adequate and timely evaluation and treatment consistent with contemporary standards of care."   That is exactly what occurred in this case.  There is no question that Plaintiff was evaluated on multiple occasions during her brief stay at the jail.

The record evidence shows that Plaintiff was initially triaged by an LPN, Nurse Beerli immediately after she arrived at the Leon County Jail.  Then, pursuant to protocol, a second round of medical review occurred by an RN, Nurse Block, who was the charge nurse on the evening shift when Plaintiff was booked into the

jail. Ultimately, the decision regarding Plaintiff's housing and to place Plaintiff on the substance abuse protocol was approved by her.

    2. Also, while it is true that a physician is not on-site at the Leon County Jail 24 hours a day, Plaintiff fails to show how the lack of around-the-clock physician coverage *caused* any of Plaintiff's alleged damages. Dr. Garcia, the physician for the Leon County Jail, was on call even when she was not physically present at the jail and the charge nurse, Nurse Block, indicated there was no hesitation to call the physician if necessary. (Doc 93-4, Block depo, 12:2-22) Nurse Beerli also understood that Dr. Garcia was available by phone after hours if needed. (Doc 93-3, Beerli depo, 21:15-25) Neither nurse contacted Dr. Garcia on the evening Plaintiff was booked into the jail because the situation with Plaintiff was not deemed an emergency at the time of triage. Even so, there is no evidence to suggest that Dr. Garcia, if present at the jail on the evening in question, would have done anything differently. There is no expert testimony or other admissible evidence to suggest that Dr. Garcia should have done something other than place Plaintiff on the substance abuse withdrawal protocol. Without such evidence, Plaintiff's arguments are merely conjecture and they can therefore not be used to create a question of fact in order to defeat a Motion for Summary Judgment on the deliberate indifference claim.

3. With regards to the arguments that Corizon Health's policy of allowing nurses to place inmates on the substance abuse withdrawal protocol without physician approval or oversight resulted in a deprivation of Plaintiff's constitutional rights, Dr. Garcia has stated that "when detainee health and safety is concerned at the booking stage, a physician consult is not necessary to initiate the protocol. The booking nurse may initiate the protocol." [Doc. 77-7, ¶ 7] Plaintiff has not presented any evidence to refute this statement or even challenge it beyond making conclusory statements that lack evidentiary support. From a practical standpoint even, it would arguably be more potentially harmful if inmates in need of such withdrawal protocols were housed without monitoring while waiting to be seen by a physician, even if that only meant a few hours.

4. In this case, Plaintiff was evaluated twice in the first two hours of entering the jail. During those encounters with Nurses Beerli and Block, Plaintiff's complaints of shoulder pain were not ignored. Rather, Plaintiff's guarding of her left shoulder was noted along with the fact that Plaintiff denied any major medical issues at the time and had vital signs within normal limits. At that time, there is no evidence to support Plaintiff's argument that there was any sort of delay in providing care to Plaintiff's arm. Rather, in their medical judgment, the two nurses felt that monitoring Plaintiff's potential substance abuse withdrawal was the priority. They did not ignore Plaintiff's symptoms or complaints. Rather, taking

those into consideration, the nurses, together, made an affirmative decision after considering the entirety of Plaintiff's presentation. Whether those nurses made the right decision is more appropriately a medical negligence question, NOT a question of whether a constitutional violation occurred.

Contrary to Plaintiff's unsupported assertions in its Response to Motion for Summary Judgment, there was no delay in responding to Plaintiff's complaints of shoulder pain. Even when viewing the evidence in the light most favorable to Plaintiff, there is no evidence that Defendant simply ignored Plaintiff's concerns or symptoms related to her shoulder. Rather, the record evidence shows that Plaintiff's entire physical condition was evaluated instead of disregarded each time Plaintiff was seen while on the substance abuse withdrawal protocol.

In Defendant's Motion for Summary Judgment is a timeline that summarizes the nine times that Plaintiff was evaluated by nurses at the jail over the course of 66 hours before she was released. (Doc. 82, p. 6-7) On each occasion, Plaintiff's vitals were taken, her pupils were examined and she was observed by the nurse for signs of sweating, flushing, restlessness, or tremors in her arms or hands when extending her arms with fingers spread apart. In addition to the observations, Plaintiff was also asked a number of questions during each visit regarding her general health. Those questions included whether Plaintiff had experienced any

chills or headaches, had any difficulty staying still, had anxiety, or whether she had any bone or joint aches.

During none of the 9 examinations was Plaintiff observed to have tremors in her hands or arms when extending her arms with fingers spread apart. And during only one examination did Plaintiff indicate she had bone and joint aches, and that was on the last examination on the night of October 14, 2016, the 8th of 9 examinations Plaintiff had while at the jail. (Doc. 77-10, p. 1)  This examination at 10:00 pm coincides with the date and time that Plaintiff provided her one and only health services request form to the nursing staff. (Doc. 77-11)  In her health services request, Plaintiff specifically requested Gabapentin, stating she had already been on the medication prior to being booked into the Leon County Jail. However, it is undisputed that Plaintiff's prescription could not be verified since Plaintiff had been unable at any point to recall the name of her pharmacy.  In response to her complaints, Plaintiff was scheduled to be evaluated by a physician but she was released from the jail before that evaluation could take place.  For the reasons stated herein, Defendant argues that the evidence, even when viewed in the light most favorable to Plaintiff, cannot support a claim for deliberate indifference. Plaintiff's complaints were not ignored.  Rather, Nurse Beerli and Nurse Block made decisions based on their own medical judgment to monitor Plaintiff for a potentially life-threatening substance abuse withdrawal instead of giving her

Tylenol or Motrin. As Nurse Beerli stated in her deposition, the fear was that providing over-the-counter pain medications might mask the symptoms of a possible dangerous withdrawal. (Doc. 77-9, Ex. I) And while Plaintiff's left shoulder injury, because of the swelling and bruising, may have been, as Plaintiff argues, obvious to the nurses and might be obvious to a layperson, the decision to treat or not treat Plaintiff's shoulder with pain medications in light of the other serious countervailing concerns of the nurses, was one that required their medical judgment.

## **Memorandum of Law**

Of note, this case presents a different situation than the facts relied on by Plaintiff from the cases cited in its Response to Defendant's Motion for Summary Judgment. In *Hill v. Dekalb Reg'l Youth Detention Ctr*, for example, the United States Supreme Court ruled that even a delay in medical treatment can constitute deliberate indifference when an arrestee presents an emergent or life-threatening medical condition. 40 F.3d 1176, 1187 (11th Cir. 1994) This same case, as acknowledged by Plaintiff in its Response (Doc. 88, p. 11-12), places the burden on the Plaintiff to "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.* at 1188

Plaintiff has failed to present any evidence that her injured shoulder was emergent or life threatening and further, Plaintiff has certainly failed to present any

evidence of the detrimental effect of the alleged delay in treatment. Arguably, given the disoriented state in which Plaintiff presented to the jail, it is entirely reasonable as Nurse Beerli testified, that the nurses thought that there was a greater likelihood of further harm to Plaintiff if she was not placed on the substance withdrawal protocol than if she did not receive Tylenol or Motrin for the bruising/swelling to her shoulder.

In Count XI, Plaintiff is, in effect, questioning the *adequacy* of the treatment provided by Defendant. Plaintiff's claim is therefore indistinguishable from a claim for medical malpractice or negligence and does not rise to the level of a constitutional violation. Plaintiff presented to the jail at booking guarding her left arm, but she also presented with severe disorientation and unable to follow simple commands or answer basic questions. The nurses were faced with a choice at that time, and they used their medical judgment to deal with what they believed was the more serious of the two issues, to deal with the issue that truly could have been life threatening.

To permit Plaintiff to present this case with these facts to a jury would be "to constitutionalize claims that sound in tort law." *See Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (federal courts are reluctant to second-guess medical judgments where an inmate has received medical attention and the dispute is over the adequacy of treatment), *cert denied, 475 U.S. 1096, 106 S. Ct. 1492, 89*

*L. Ed. 2d 894* (1986)   For all of the reasons stated herein, Defendant request that summary judgment be granted as to Count XI.

## CERTIFICATE OF WORD LIMITATION

In accordance with N.D. Fla. Loc. R. 7.1(F), the number of words in the SUPPLEMENTAL memorandum, which excludes the case style, signature block, and certificates, is 1,814.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing has been provided via CM/ECF and electronic mail to Plaintiff Eugenia Woods upon counsel Marie Mattox, marie@mattoxlaw.com; Cynthia Myers at cynthia@mattoxlaw.com of Marie Mattox PA, 203 N. Gadsen St. Tallahassee, FL 32301, 850-383-4800, Defendant Walt McNeil upon counsel Dawn Pompey Whitehurst, Sniffen & Spellman, P.A. 123 N Monroe St, Tallahassee, FL 32301, dwhitehurst@sniffenlaw.com, twylie@sniffenlaw.com; Defendant C. M. Swindle and Florida DHS upon counsel Brian C. Keri, Brian C. Keri PA, 3375-H Capital Circle NE, Ste 4, Tallahassee, FL 32308, 850-297-2222 brianckeri@earthlink.net and michellemsmith@earthlink.net this 1st day of November, 2021.

/s/ *Jami M. Kimbrell*
Jami M. Kimbrell, ESQUIRE
Florida Bar No.:  0657379
jmk@brookslawyers.net
arj@brookslawyers.net
Joseph E. Brooks
FBN: 0880752
jeb@brookslawyers.net
paralegal@brookslawyers.net
BROOKS LAW
2629 Mitcham Drive
Tallahassee, FL 32308
Tel: 850-201-0942
ATTORNEYS FOR Corizon